THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* OTTIS R. WILSON, Defendant-Appellant.

(No. 74-76;

Second District (2nd Division)—October 10, 1975.

Ralph Ruebner and Mary McCormick, both of State Appellate Defender's Office, of Elgin, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan (James W. Jerz and Martin Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

· · · Defendant was indicted on one count of attempted murder and three counts of aggravated battery. A jury found him guilty under one of the latter counts, and the court sentenced him to a term of 5 years' probation conditioned upon the first year being spent in the Lake County Jail. On appeal, we reverse and remand for resentencing but affirm the conviction.

The scene of the incident was a tavern owned by the defendant. Defendant had been drinking and playing pool there since late afternoon. A hired bartender was on duty during most of the evening. The complaining witness, William McAbee, his wife, and a friend, were patrons during the evening. Prior to the occurrence, McAbee had attempted to take over as bartender and was told by defendant to remove himself from behind the bar; McAbee did so. About 10 minutes before the incident, the hired bartender went off duty, and McAbee again went behind the bar and waited on several customers. Testimony is in conflict as to the happenings which followed.

Defendant testified that McAbee twice elbowed and pushed him out of the way while attempting to serve customers and, on one such occasion, defendant was spun around by McAbee in such a manner that he (defendant) fell to the floor, hitting his head against the bar. Defendant stated that he then took a gun from a drawer in the bar, and attempted to get the assistance of McAbee's wife and friend to remove McAbee from behind the bar, but that they merely laughed; that he approached McAbee from the rear, tapped him on the side with his hand and ordered McAbee from behind the bar. McAbee jerked his elbow up into defendant causing the gun to fall. Defendant grabbed it up, McAbee grasped defendant's gun hand, and, in the struggle which ensued, the gun discharged repeatedly as McAbee squeezed defendant's hand.

McAbee testified that defendant had been drinking that evening and that, after the regular bartender left, he (McAbee) went behind the bar to help wait on customers. As he passed defendant to wait on a customer, defendant, for the second time that evening, fell to the floor from his bar stool. Defendant then came up behind McAbee and shot him in the back. The shot spun him around, and defendant shot him in the abdomen. McAbee then grabbed defendant's hand which held the gun, and the two struggled for the weapon until two more shots were fired, hitting McAbee in the arm and the calf, whereupon McAbee fell to the floor.

■■ Defendant claims reversible error in the conduct of the trial and claims that the sentence imposed was improper. He first contends that the trial court erred in failing to conduct an *in camera* inspection of the State's files to determine if the State had properly answered the defendant's discovery motion. On cross-examination, McAbee testified that he

believed that Assistant State's Attorney Witt had taken notes when interviewing McAbee. Defense counsel pointed out that the answer to his discovery motion revealed no such statement. Witt told the court that he did not take notes at any interview with McAbee and in fact never takes such notes.

As the supreme court has repeatedly observed:

> "The law is well settled that a defendant is entitled to a previous statement of a witness to be used for impeachment purposes, but the requirement applies only to specific statements which have been established to exist * * *." *People v. Durso*, 40 Ill.2d 242, 250 (1968), *cert. denied*, 393 U.S. 1111; *People v. Dennis*, 47 Ill.2d 120, 129 (1970), *cert. denied*, 403 U.S. 907.

When inquiry is made in open court regarding the existence of a written statement, and the person who allegedly took that statement denies that it was ever reduced to writing, the trial court is justified in concluding that no such statement exists. See *People v. Britt*, 22 Ill.App.3d 695, 701-04 (1974).

■■ Defendant claims, however, that the trial court committed error when it failed to hold an *in camera* inspection of the State's files, under Supreme Court Rule 412(a)(i), to determine whether such a statement existed in writing. That rule does not support defendant's contention.

In language closely paralleling defendant's discovery motion, Rule 412(a)(i) requires the State to provide (1) the names and addresses of witnesses, (2) their written or recorded statements, (3) memoranda containing substantially verbatim reports of their oral statements and (4) a list of memoranda reporting or summarizing their oral statements. Upon written motion of defense counsel, the court is instructed to examine, *in camera,* documents which fall within the fourth category. If the court then finds that the documents are substantially verbatim reports properly within the third category, the documents must be disclosed.

The rule clearly expresses that it is the court's function to determine whether documents in the State's possession fall within category (3) or category (4). It does not charge the court with the duty of discovering by its examination whether or not the State has certain documents. It would be an unwarranted extension of this rule and an unjustifiable burden on judges to hold that it authorizes a search of the State's files for statements whose existence the State's Attorney, an officer of the court, has denied in open court. Moreover, even if defendant were correct in his contention that the rule authorizes an *in camera* inspection to ascertain the existence of certain documents, his failure to so move the trial court would be fatal to this issue on appeal. Our supreme court has recognized that the failure to request a court's *in camera* inspection

amounts to a waiver of this right. *People v. Wright,* 30 Ill.2d 519, 532 (1964).

■■ The State did not deny interviewing McAbee nor deny that Mc-Abee gave an oral statement. On this basis, defendant alternatively argues that it was error for the trial court not to order the State to reduce McAbee's statement to writing. It should be noted that no such request was made of the court. In its discretion under Rule 412(h), the trial court clearly could have so ordered, but Rule 412 has not been construed to require that all relevant information must be reduced to writing. (*People v. Manley,* 19 Ill.App.3d 365, 369-70 (1974).) In *Manley,* which is cited by defendant herein, the court, on defendant's motion, ordered an oral statement reduced to writing but pointed out that the discretionary provision of Rule 412(h) was intended to have small scope. *Manley* is distinguishable from the case at hand. There, a specific statement was requested. Also the court there held that the State failed to reduce such statement to writing specifically to avoid discovery, intending to surprise the defense at trial. In the case at hand, there is no evidence of any such intention on the part of the State. Absent an appropriate motion by defense counsel, it cannot be said that the trial court abused its discretion by failing to require the State to reduce to writing statements made by McAbee.

■■■ Defendant next complains that defense counsel's efforts to rehabilitate defendant were improperly restricted when he attempted to examine Ms. Lord, a secretary for the State's Attorney. The State tried to impeach defendant's testimony regarding the immediate circumstances surrounding the first shot. Earlier, on direct examination, defendant had stated that McAbee grabbed his gun hand and "everytime McAbee squeezed and pulled, [defendant] would have to squeeze to hold on and the pistol fired." To impeach this testimony, the State elicited from Ms. Lord defendant's prior transcribed statements: "I don't know when the first shot went off, I just went haywire, I don't know." Defense tried unsuccessfully to introduce the two questions and responses which preceded the above quote, those being:

> "Q. And on Sunday night did you have the gun on you or where was it prior to the shooting?
>
> A. Before the shooting it was in the north end in back of the bar in the drawer in the north end, that's where I keep it.
>
> Q. I notice on your right [sic] you have a cut?
>
> A. That is when he had my hand, this is when he grabbed me."

The accused has the right to cross-examine a witness concerning any matter which explains, modifies, or discredits what he said on direct

examination. (*People v. Strother*, 53 Ill.2d 95, 99 (1972).) The statements which defendant sought to introduce, however, clearly do not modify or explain his negative statements, "I don't know when the first shot went off, I just went haywire, I just don't know." It is within the sound discretion of the trial judge to limit the cross-examination of the witness to proper questions. Only in a case of clear abuse of such discretion, resulting in manifest prejudice to the defendant, will a reviewing court interfere. (*People v. Nugara*, 39 Ill.2d 482, 487-88 (1968), *cert. denied*, 393 U.S. 925.) We find no abuse here.

■■ During the trial the State elicited testimony that the wife of the complaining witness was pregnant, and the defense claims it was thus error for the court not to declare a mistrial. This testimony was elicited in rebuttal to defense counsel's direct examination of the defendant regarding Mrs. McAbee's behavior on the night of the incident. Defense counsel had asked if, just after the shooting, defendant "saw Mrs. McAbee and her male companion leave the establishment." Defendant replied, "Yes, they were laughing like it was a big joke or something." The State argues this response inferred that Mrs. McAbee and her male companion were involved in an illicit affair. We find no basis for such inference to be drawn and conclude it was improper to allow testimony relative to Mrs. McAbee's pregnancy. The court has repeatedly condemned prosecution's references to the family of the deceased in murder cases (*People v. Bernette*, 30 Ill.2d 359, 371 (1964); *People v. Gregory*, 22 Ill.2d 601, 605-06 (1961)) because such references are highly prejudicial to the defendant in the eyes of the jury, without having relevance to the guilt or innocence of the accused. However, not every such improper reference entitles a defendant to a new trial since such evidence can be harmless. (*People v. Jordan*, 38 Ill.2d 83, 90-92 (1967).) In the case at hand there was no murder, no surviving widow, no orphaned child, and the jury did not determine the sentence. Under these circumstances it could not be said that the testimony of Mrs. McAbee's pregnancy so inflamed and influenced the jury that the defendant was denied a fair trial. Where it appears impossible to reasonably anticipate any different result on retrial, any error in allowing such improper testimony is harmless. *People v. Wilson*, 51 Ill.2d 302, 305-08 (1972).

We have closely examined defendant's other allegations of error regarding both the exhibition of scars to the jury and the prosecution's closing argument. We have found these contentions to be without merit.

■■ The State concedes that the so-called split sentence was improperly imposed in this case. At the time of sentencing, the Unified Code of Corrections (Ill. Rev. Stat., 1972 Supp., ch. 38, § 1005—6—3(d)) provided:

"The court shall not require as a condition of the sentence of probation or conditional discharge that the offender be committed to a period of imprisonment except under Article 7."

Article 7 (Ill. Rev. Stat., 1972 Supp., ch. 38, § 1005—7—1 *et seq.*) deals with sentences of periodic imprisonment and is not applicable in this case. The sentence herein (5 years' probation with the first year to be spent in the county jail) was therefore improper and, in accordance with this court's earlier holding (*People v. Woods*, 13 Ill.App.3d 860, 869 (1973)), we affirm the conviction but vacate the sentence and remand the cause for resentencing.

Affirmed and remanded for resentencing.

RECHENMACHER, P. J., and DIXON, J., concur.