THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
SYLVESTER BENHOFF, Defendant-Appellant.

Fifth District   No. 76-361

Opinion filed July 12, 1977.

Michael J. Rosborough and Phillip A. Kramer, both of State Appellate
Defender's Office, of Mt. Vernon, for appellant.

Patrick Hitpas, State's Attorney, of Carlyle (Bruce D. Irish, of Illinois State's
Attorneys Association, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:
This is an appeal by defendant, Sylvester Benhoff, from a judgment
entered by the circuit court of Clinton County on jury verdicts of guilty of

two offenses of aggravated battery. Defendant was sentenced to two concurrent terms of one year to 15 months imprisonment.

On appeal defendant presents two issues for review. First, in connection with the State's failure to produce a police report pursuant to discovery, defendant raises the question of whether the trial court abused its discretion in failing to impose any sanctions in response thereto. Secondly, defendant presents the question of whether the element of harm was sufficiently proved to support one of defendant's convictions.

At trial the State's evidence showed that in response to a phone call, Police Officer Paul Spaur arrived at a private residence where he found defendant lying in the yard. Spaur asked defendant to leave the property but defendant refused. Spaur then placed defendant under arrest and escorted him to a police car. Subsequently, while the two were enroute to the county jail, defendant suddenly hit Spaur in the face with a fist and he grabbed at the steering wheel. Spaur stepped on the brakes and a struggle ensued until eventually defendant was handcuffed. As a result of the struggle defendant suffered minor injuries while Spaur was not injured at all.

After defendant had been processed at the jail, he was taken to a hospital for treatment of his minor wounds by sheriff's deputies Jack Taylor and Bob Brown. Again defendant was uncooperative and during one encounter, Taylor received minor injuries caused by defendant.

On the basis of these two incidents involving individuals whom defendant knew to be peace officers, he was convicted of two offenses of aggravated battery under section 12—4(b)(6) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 12—4(b)(6)).

Prior to trial, on February 20, 1976, defendant filed a discovery motion requesting "any relevant written or recorded statements of persons whom the State intends to call as witnesses." The State responded on February 23, 1976, that it did not have any such statements. However, at trial approximately two months later, Officer Spaur stated on cross-examination that he had written a police report of the incident. At a conference in chambers, defendant moved for a mistrial or alternatively that Spaur's testimony be stricken from the record and the jury instructed to disregard it as a sanction for the State's failure to produce the police report. Defendant argued that the report could be used to impeach Spaur's testimony and he also alleged that it might contain substantially verbatim statements of the defendant. The State responded by stating that it did not have Spaur's police report. Following arguments, the court denied defendant's motions.

On appeal defendant does not contend that the court abused its discretion in denying his motions for a mistrial or to strike Spaur's

testimony. Instead, defendant argues that the trial court should have, *sua sponte,* ordered the production of the report or an explanation of why the report could not be produced. Defendant further contends that to have not done so was an abuse of discretion.

The record shows, however, that defendant had not requested a continuance for the purpose of obtaining the report. Nor had defendant asked that Spaur be brought into chambers for examination as to when the report was written, what was the nature of its contents, whether the officer had a copy of the report or to whom it had been delivered. After the State denied that it had the report in its possession, defendant made no request for a court inspection of the State's Attorney's files nor that any similar court ordered search be made. Rather, defendant only presented a well-prepared, extensive argument for a mistrial or to strike Spaur's testimony which itself makes evident that defendant was not surprised to learn that Spaur had written a police report of the incident. Yet prior to trial, defendant had taken no action in court to seek compliance with his discovery motion.

■■   The purpose of discovery is the ascertainment of truth in the quest for justice and the elimination of surprise at trial. It should not be used as a tactic to obstruct the trial process. Absent an appropriate motion by defendant for a continuance and for the production of the report or an explanation of the failure to so produce it, it cannot be said that the trial court abused its discretion in failing to order such actions, *sua sponte.* (*People v. Sanders,* 36 Ill. App. 3d 518, 344 N.E.2d 479; *People v. Wilson,* 32 Ill. App. 3d 842, 336 N.E.2d 92; *People v. Embry,* 12 Ill. App. 3d 332, 297 N.E.2d 604.) Moreover, while it was clear that the police report was once in existence, at the time of trial the State denied having the report. We note parenthetically that during oral argument on appeal, the State admitted now having possession of the report. However, it is undisputed that at the time of trial the State's denial thereof was made in good faith. At trial, if defendant had desired to have the trial court conduct an *in camera* inspection of the State's file to ascertain the existence of the report, the burden was upon defendant to request such an inspection and his failure to make such a request constitutes a waiver of this right. (*People v. Wright,* 30 Ill. 2d 519, 198 N.E.2d 316; *In re Forrest,* 12 Ill. App. 3d 250, 298 N.E.2d 197.) In *People v. Howze,* 1 Ill. App. 3d 253, 273 N.E.2d 733, relied upon by defendant, the trial court denied the defendant's timely and appropriate motions to ascertain the existence of the material sought and to compel the production of the material. *Howze* is thus distinguishable since in the instant case defendant failed to make any similar appropriate motions. Accordingly, we find no merit to defendant's contention.

During the cross-examination of Spaur by defendant the following testimony was given with regard to Spaur's encounter with defendant in the police car:

"Q. Did you require any hospitalization as a result of this Officer Spaur?
A. No sir.
Q. Did you have any cuts or bruises?
A. No.
Q. Did you have any serious injuries at all?
A. No.
Q. Did you have any injuries at all?
A. No."

The record thus discloses that defendant did not physically injure Spaur at all as a result of his physical contact with Spaur. On this basis, defendant's second contention is that his conviction for aggravated battery in connection with Spaur cannot stand since actual physical harm of Spaur was not proven.

Section 12—3(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 12—3(a)) defines a battery as follows:

"A person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual."

Section 12—4(b)(6) of the Criminal Code of 1961, under which defendant was convicted, provides that a person commits aggravated battery when:

"(b) A person who, in committing a battery * * *:

* * *

(6) Knows the individual *harmed* to be a peace officer, or a person summoned and directed by him, or a correctional officer, while such officer is engaged in the execution of any of his official duties including arrest or attempted arrest; * * *." (Emphasis added.)

At issue is the question of whether the term "harmed" as used in the statute is limited to only actual physical harm. We have previously answered this question in the affirmative in *People v. Crane*, 3 Ill. App. 3d 716, 279 N.E.2d 134.

■■ In *Crane* our analysis was based on a comparison of the terms used in section 12—4(b). We stated:

"Subsection (3) through Subsection (9) of section 12—4(b) cover various circumstances in which an aggravated battery might arise. All of the subsections, except subsection (8) begin with the clause

'knows the individual *harmed*'. Subsection (8) however, begins: 'is, or the person *battered* is'.

The word 'battery' is defined in Section 12—3(a) to include both the causing of bodily harm and physical contact of an insulting or provoking nature. Since the legislature used the words 'harmed' and 'battered' in other parallel subdivisions of section 12—4(b), we conclude that they meant something different by the two terms. Accordingly, we conclude that the term 'harmed' refers to actual physical harm and the term 'battered' refers to a battery as defined in section 12—3(a)." (Emphasis in original.) 3 Ill. App. 3d 716, 719-20, 279 N.E.2d 134, 137.

Following our rational in *Crane*, this court stated in *People v. Nance*, 26 Ill. App. 3d 182, 185, 324 N.E.2d 652, 655, that:

"Evidence of mere physical contact of a provoking nature is insufficient to constitute the 'harm' required by section 12—4." Accord, *People v. Haltom* (1st Dist. 1976), 37 Ill. App. 3d 1059, 347 N.E.2d 502.

On the other hand, the Fourth District Appellate Court in *People v. Meints*, 41 Ill. App. 3d 215, 355 N.E.2d 125, rejected the reasoning in *Crane* and stated:

"We do not believe the English language to be so rigorously well defined that the words 'harm' and 'battered' cannot be used synonymously. Our analysis of the legislative intent is that recognition and concern was being extended [by section 12—4(b)] to people on or about a public way or persons in positions of authority, whether they be police, correctional officers, school teachers or firemen. The legislation which was the product of that intent constituted an effort by the legislature to shield those persons from harassment and interference. The legislation placed these people, because of their public duties and functions, into a protected category and subjected violators of their persons to a much greater sanction than that established for a simple battery committed upon persons not in the protected group." 41 Ill. App. 3d 215, 219-20, 355 N.E.2d 125, 128-29; see also *People v. Paez* (2d Dist. 1977), 45 Ill. App. 3d 349, 359 N.E.2d 1083; *People v. Claudio* (1st Dist. 1973), 13 Ill. App. 3d 537, 300 N.E.2d 791.

We are unpersuaded by the court's analysis in *Meints*. It is a matter of accepted definition that "harm" means some damage or injury. That "harm" is not synonymous with "battered" is made clear, as we stated in *Crane*, by the legislature's own definition of battery which encompasses physical contacts of an insulting or provoking nature but which involve no actual damage or physical injury. Hence, a broad set of acts amount to a battery although they cause no harm to the victim. Certainly if the

legislature had intended that merely insulting or provocative physical contacts with a peace officer should amount to the felony of aggravated battery rather than the misdemeanor of simple battery, they could have so stated. However, the terms actually employed by the legislature may not be glossed over only because it is felt that acts of harassment or interference directed against persons in positions of authority constitute a greater social evil than similar acts directed against private citizens.

■■ The evidence shows that defendant may have battered Spaur by a physical contact of an insulting or provoking nature, but he had not physically harmed Spaur. Since section 12—4(b)(6), under which defendant was charged and tried requires the person to be harmed, the defendant cannot be convicted of violating section 12—4(b)(6). See *People v. Crane*, 3 Ill. App. 3d 716, 279 N.E.2d 134.

For the foregoing reasons, the judgment entered by the circuit court of Clinton County for aggravated battery upon Officer Spaur is reversed, and the judgment entered for aggravated battery upon Officer Taylor is affirmed.

Affirmed in part and reversed in part.

CARTER, P. J., and G. MORAN, J., concur.